**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-00017-NYW-MEH

MORDHORST CLEANING, LLC, d/b/a BLUE RIBBON EXTERIORS &
CONSTRUCTION,

      Plaintiff,

v.

AMERICAN STRATEGIC INSURANCE CORP.,

      Defendant.

---

## ORDER ON MOTIONS TO STRIKE AND TO EXCLUDE

---

This matter is before the Court on four motions to strike or exclude expert testimony:

(1)     Defendant's Motion to Exclude the Testimony of Kurt Smith Pursuant to Fed. R. Evid. 702 and/or 403 (the "Motion to Exclude Smith"), [Doc. 46, filed June 4, 2024];

(2)     Plaintiff's Motion to Strike the Testimony of Keith R. Olivera Pursuant to FRE 702 and FRCP 26(a)(2)(D) (the "Motion to Strike Olivera"), [Doc. 47, filed June 4, 2024];

(3)     Plaintiff's Motion to Strike the Testimony of Gary Stevens Pursuant to FRE 702 (the "Motion to Strike Stevens"), [Doc. 49, filed June 4, 2024]; and

(4)     Defendant's Motion to Exclude the Testimony of Britta Moss Pursuant to Fed. R. Evid. 702 (the "Motion to Exclude Moss"), [Doc. 50, filed June 4, 2024].

For the reasons herein, the Motion to Exclude Smith is respectfully **GRANTED**; the Motion to Strike Olivera is respectfully **GRANTED in part** and **DENIED as moot in part**; the Motion to Strike Stevens is respectfully **DENIED**; and the Motion to Exclude Moss is respectfully **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This case arises out of an insurance coverage dispute between Plaintiff Mordhorst Cleaning, d/b/a Blue Ribbon Exteriors & Construction ("Plaintiff" or "Blue Ribbon"), and Defendant American Strategic Insurance Corp. ("Defendant" or "ASIC"). *See generally* [Doc. 41; Doc. 63]. In short, ASIC insured a property that experienced water damage in 2021. [Doc. 41 at ¶¶ 6, 8, 13]. The insureds filed a claim with ASIC and assigned the claim to Blue Ribbon. [*Id.* at ¶¶ 15–16, 58]. Blue Ribbon subsequently sued ASIC for breach of contract, unreasonable delay or denial of benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116 (or "statutory bad faith"), and common law bad faith, alleging that Defendant failed to pay benefits owed under the insurance policy and acted unreasonably in its handling of the insurance claim. [Doc. 3 at ¶¶ 62–78]. Plaintiff later filed an Amended Complaint that dropped the breach of contract claim. [Doc. 41 at ¶¶ 60–69].

The Parties have filed four Motions seeking to exclude or strike expert testimony prior to trial. [Doc. 46; Doc. 47; Doc. 49; Doc. 50]. The Court has reviewed the briefs and the applicable case law and concludes that it can resolve these Motions without an evidentiary hearing.[1]

---

[1] Plaintiff does not believe that an evidentiary hearing is necessary, *see* [Doc. 47 at 12; Doc. 49 at 9], and Defendant requests an evidentiary hearing "if the Court deems appropriate," *see* [Doc. 46 at 15; Doc, 50 at 15]. Rule 104 requires a hearing on preliminary questions of admissibility in civil cases "when justice so requires." Fed. R. Evid. 104(c)(3). "[W]hile a party may request a *Daubert* hearing, it is within the Court's discretion to determine whether a hearing is necessary." *A.R. ex rel. Pacetti v. Corp. of*

**LEGAL STANDARDS**

I.    **Rule 702**

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience,
training, or education may testify in the form of an opinion or otherwise if the
proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help
the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and
methods to the facts of the case.

Fed. R. Evid. 702.  "In essence, Rule 702 permits a court to admit expert testimony that

is 'both reliable and relevant.'"  *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172

(10th Cir. 2020) (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir.

2006)).  The party proffering expert testimony has the burden of showing its admissibility

by a preponderance of the evidence.  *Squires ex rel. Squires v. Goodwin*, 829 F. Supp.

2d 1041, 1048 (D. Colo. 2011).

It is well established that trial courts are charged with the responsibility of acting

as gatekeepers to ensure that expert testimony is reliable and relevant.  *See Kumho Tire*

*Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*,

509 U.S. 579, 588–89 (1993).  To fulfill that gatekeeper function, the trial court first

analyzes whether the proffered expert is qualified "by knowledge, skill, experience,

_____

*President of Church of Jesus Christ of Latter-Day Saints*, No. 12-cv-02197-RM-KLM,
2013 WL 5463518, at *10 (D. Colo. Sept. 30, 2013).  The Court does not find an
evidentiary hearing necessary to resolve the pending Motions.

training, or education" to render their opinions.  Fed. R. Evid. 702; *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 770 (10th Cir. 2019).  If the expert is qualified, the trial court must determine whether the expert's opinions are reliable by assessing the underlying reasoning and methodology.  *Bill Barrett Corp.*, 918 F.3d at 770.  The court must also determine whether the expert's opinions are "applicable to a particular set of facts," i.e., are relevant to the case at hand.  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003).  This inquiry "encompasses Rule 702's requirement that the evidence help the trier of fact to understand the evidence or to determine a fact in issue." *Sanderson*, 976 F.3d at 1172 (cleaned up).

## II.    Rule 26

Rule 26(a) requires a party to disclose the identity of any expert witness it may use at trial.  Fed. R. Civ. P. 26(a)(2)(A).  A party must make this disclosure "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  In addition, expert disclosures must be supplemented if "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1); Fed. R. Civ. P. 26(a)(2)(E).  Permissible supplementation includes "correcting inaccuracies[] or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure."  *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (quotation omitted).  "A supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation."  *Id.*

Rule 37(c) governs violations of Rule 26(a)(2).  It provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(iv).

Fed. R. Civ. P. 37(c)(1).  A party moving to strike an expert witness under Rules 26 and 37 has the initial burden of demonstrating that the disclosing party failed to comply with Rule 26.  *Morris v. Wells Fargo Bank, N.A.*, No. 09-cv-02160-CMA-KMT, 2010 WL 2501078, at *1 (D. Colo. June 17, 2010).  If the moving party meets that burden, then the party responsible for the Rule 26 violation must show that the failure was substantially justified or harmless.  *Sender v. Mann*, 225 F.R.D. 645, 655 (D. Colo. 2004).  To determine whether a violation was substantially justified or harmless, courts consider (1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness.  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).  The determination as to whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the trial court.  *Id.*

## ANALYSIS

### I.    The Motion to Exclude Smith

First at issue is whether the Court should exclude the opinions of Kurt Smith ("Mr. Smith"), a licensed public adjuster disclosed by Plaintiff as a non-retained expert.  *See* [Doc. 46-17 at 2].  Defendant asserts—and Plaintiff does not dispute—that pursuant to an agreement with the insured, Mr. Smith is set to receive 10% of any proceeds Plaintiff receives in this lawsuit.  *See* [Doc. 46 at 10; Doc. 56 at 3; Doc. 46-5 at 1].  ASIC contends that because Mr. Smith has a financial stake in this litigation, his opinions are unreliable and should be excluded under Rule 702.  [Doc. 46 at 7–11].  It further argues that Mr. Smith's opinions are also excludable under Rule 403, [*id.* at 11–12], and because they are not based on sufficient facts or data or a reliable methodology, [*id.* at 12–14].  Blue Ribbon responds first that Mr. Smith's financial interest in the litigation is an insufficient basis to preclude his expert testimony.  [Doc. 56 at 3–7].  It also briefly defends the reliability of Mr. Smith's opinions and the data and methodology on which they are based. [*Id.* at 7].

"Every person is competent to be a witness unless these rules provide otherwise. But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 601.  Colorado courts recognize "a settled principle of American law" that "expert witnesses should not receive contingent fees."  *City & Cnty. of Denver v. Bd. of Assessment of the State of Colo.*, 947 P.2d 1373, 1379 (Colo. 1997).  Indeed, when an expert "obtains a direct financial interest in the outcome of the litigation . . ., any semblance of independence or promise of intellectual rigor that normally adheres to an expert witness is fatally wounded."

6

*Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1210 (D. Colo. 2022) (quotation omitted).  This is because "[i]n the specific context of expert testimony, the usefulness of an expert witness depends in large measure on the degree to which the expert is able to convince the trier of facts of his or her strict and unyielding impartiality to both the parties and their counsel, and to the issues in the case."  *Calfox, Inc. v. Certain Underwriters at Lloyd's, London Subscribing to Certificate No. T0530bp1eb10018*, No. 20-cv-02443-RM-KMT, 2024 WL 1051948, at *10 (D. Colo. Mar. 11, 2024) (quotation omitted).

Some courts in this District, following the guidance of Colorado state courts, apply a balancing test under Rule 403 to determine whether an expert witness's financial stake in a case warrants the expert's exclusion.  *See, e.g.*, *Midtown Invs., LP v. Auto-Owners Ins. Co.*, 641 F. Supp. 3d 1066, 1075 (D. Colo. 2022); *Hiland Hills Townhouse Owners Ass'n v. Owners Ins. Co.*, No. 17-cv-01773-MSK-MEH, 2022 WL 2198262, at *10 (D. Colo. Feb. 8, 2022); *but see Calfox*, 2024 WL 1051948, at *10 (excluding opinions without conducting a Rule 403 balancing test).  Under this analysis, the Court must determine whether the potential of unfair prejudice that may result from permitting Mr. Smith's opinions outweighs the probative value of those opinions.  *Midtown Invs.*, 641 F. Supp. 3d at 1076.  "[T]he question of whether an improperly-compensated expert may testify is left to the sound discretion of the trial court, to be determined on a case-by-cas[e] basis, based on the reliability of that testimony under all the circumstances."  *Hiland Hills*, 2022 WL 2198262, at *9.  This Court finds that the application of such balancing test is appropriate here.

***Probative Value.*** Plaintiff asserts that it "anticipates [Mr. Smith] will testify as to his opinions on the valuation of cost of repair for the subject claim." [Doc. 56 at 4–5]; *see also* [*id.* at 5 ("Plaintiff intends to proffer Mr. Smith's testimony for the purpose of explaining his valuation of the claim prior to when this case was filed."); Doc. 46-17 (Plaintiff stating that Mr. Smith will testify about "the construction-related need for the work being estimated and the reasonableness of the pricing being reflected" and the "necessity of the repair for each line item")]. Defendant argues that the probative value of these opinions is low because Mr. Smith's opinions overlap with the opinions of Plaintiff's other non-retained experts, Tim Cantu and Chris Holder, who are expected to opine about the necessity and cost of repairs to cabinetry, flooring, and electrical work. [Doc. 46 at 11–12; Doc. 68 at 5]. Plaintiff disagrees, asserting that it "has identified Mr. Smith as its sole expert regarding the reasonable cost of repair, scope and methodology of repair, extent of damage, or Xactimate estimates" and neither of its other experts can speak about these topics. [Doc. 56 at 6].

The following facts are undisputed. Mr. Smith is the owner and sole employee of Paradigm Claims. [Doc. 46-7 at 43:5–9, 48:4–6].[2] Under its agreement with the insured (which has been assigned to Blue Ribbon), Paradigm Claims stands to recover 10% of the total replacement cost value of the claim. *See* [Doc. 46-5]. The higher the amount recovered, the higher the fee paid to Paradigm Claims and Mr. Smith. [Doc. 46-7 at 80:9–25]. In addition, Mr. Smith conceded at his deposition that he did not know how contractors typically set their prices, [*id.* at 133:7–18], and that he was not aware of the

---

[2] When citing to transcripts, the Court cites to the page and line numbers appearing on the transcript pages. In all other instances, the Court cites to the page number assigned by the CM/ECF system.

basis for Blue Ribbon's pricing, [*id.* at 94:18–23; 96:17–19].  Mr. Smith also testified that

his own assessment of the accuracy of the pricing was based on internet searching,

without mentioning his prior industry experience or Xactimate, [*id.* at 94:10–17], and he

did not verify the price actually paid by Blue Ribbon, [*id.* at 127:18–128:3; 134:11–18].

Consistent with other courts in this District, the Court finds that Mr. Smith's financial

stake in this litigation "creates an incentive for [him] to overstate and exaggerate his

positions in order to encourage the highest recovery possible."  *Girard Offs., LLC v. Am.*

*Zurich Ins. Co.*, No. 19-cv-03590-PAB-MEH, 2022 WL 4467240, at *11 (D. Colo. Sept.

26, 2022).  Coupled with the above admissions, the fact that Mr. Smith maintains a

financial interest in the outcome of this litigation greatly diminishes his impartiality and, in

turn, the reliability of his opinions.  *See* [Doc. 46-7 at 80:20–25 (Mr. Smith conceding that

the higher the valuation, the more he will be paid)].  This Court finds that the probative

value of any expert opinions that Mr. Smith may have regarding the reasonableness of

cost of repair, scope, or methodology of repair, extent of damage, or Xactimate estimates

are minimal, at best.[3]

***Danger of Unfair Prejudice.***  Permitting a conflicted expert with a financial stake

in the ultimate valuation determination to testify *about valuation* and other related topics

---

[3] Nor is this Court persuaded that Mr. Smith is the sole expert for the reasonable cost of
repair, scope and methodology of repair, or extent of damage.  For example, Mr. Holder
is expected to testify about "the appropriate retail price" for the replaced flooring, cabinets,
countertops, and backsplash and "market rate quotes" for "replacement countertops,
cabinets, and flooring."  [Doc. 46-17 at 6].  Mr. Smith's estimate contains price estimates
for flooring, cabinets, and countertops.  *See, e.g.*, [Doc. 56-1 at 4].  And Mr. Cantu is
expected to testify about "the cost of electrical work."  [Doc. 56 at 6].  There are at least
some electrical line items in Mr. Smith's estimate report.  *See generally* [Doc. 56-1].
Plaintiff's assertion that Mr. Cantu cannot "speak to . . . [the] scope of repairs," [Doc. 56
at 6], is contradicted by its statement that Mr. Cantu will testify about why the kitchen
wiring needed to be replaced and why other repairs were needed due to code
requirements, [Doc. 46-17 at 5–6].

presents the significant danger of unfair prejudice to Defendant.  *See Girard*, 2022 WL 4467240, at *11 ("Defendant supports its positions on valuation and coverage by offering the opinions of experts who are not compensated based on the result of the litigation. This asymmetry of incentives leads to an unfair prejudice to defendant.").   Although Plaintiff argues there is no risk of prejudice to Defendant because Mr. Smith made his estimates before this lawsuit was filed, *see* [Doc. 56 at 5], the Court is unpersuaded by this argument.  Mr. Smith signed the agreement giving him a financial stake in the claim on June 18, 2021.  [Doc. 46-5 at 1].  His estimates were prepared on July 19, 2021.  [Doc. 56-1 at 1].  In other words, his conflict of interest existed at the time he made his estimates. Moreover, "[i]t is the financial interest in the outcome of the case which creates the conflict of interest, and when that financial interest arose makes no difference to possible influence it will have on the witness's reliability."  *Canyon Club Condo. Owners Ass'n v. Am. Fam. Mut. Ins. Co.*, No. 18-cv-00683-DDD-STV, 2023 WL 10410009, at *3 (D. Colo. Sept. 29, 2023).

On the other hand, Plaintiff argues that it will be unduly prejudiced by the exclusion of Mr. Smith's expert testimony because Mr. Smith is "Plaintiff's only cost of repair expert." [Doc. 56 at 6–7].  As explained above, this is not so clear, given that Plaintiff anticipates that Mr. Cantu and Mr. Holder will testify as to at least some costs of repair.  [Doc. 47-17 at 5–6].  Any Mr. Smith will still be permitted to testify as a fact witness, which lessens the potential for prejudice.  *See* [Doc. 46-17 ("[Mr. Smith] inspected the Property. . . .  Based upon his observations and measurements, Mr. Smith will testify that he prepared construction estimates reflecting the work needed to repair the water damage.")]; *see also Canyon Club*, 2023 WL 10410009, at *2 (noting that excluded expert could still testify

about his "real-time observations" of the events as a fact witness); *Wheatridge*, 578 F. Supp. 3d at 1211 (concluding that non-moving party would suffer "minimal prejudice" from the exclusion of expert testimony where the witness could still testify as a fact witness). Moreover, the Court notes that the Motion to Exclude Smith was filed five months ago, and Plaintiff has not moved to designate another expert out-of-time. *Cf. Calfox*, 2024 WL 1051948, at *10 (excluding conflicted expert's testimony despite recognized prejudice to the party offering that expert because that party did not attempt to cure the prejudice by asking to designate a new expert or re-open discovery).

In all, the Court finds that the danger of unfair prejudice of permitting an interested witness to testify in this case outweighs the probative value of Mr. Smith's opinions. The Court respectfully **GRANTS** the Motion to Exclude Smith. Mr. Smith will not be permitted to testify as an expert witness, but he will be permitted to testify as a fact witness as to events that transpired during the claim process and his own observations, subject to the requirements of the Federal Rules of Evidence.

## II.    The Motion to Strike Olivera

Next, Plaintiff moves to strike certain opinions of Defendant's claims handling expert, Keith Olivera. [Doc. 47]. Blue Ribbon contends that (1) Defendant has failed to properly raise and preserve any affirmative defenses concerning fraud, material misrepresentation, and/or violations of the "Concealment Or Fraud" clause of the policy, and thus, any opinions related to such issues are irrelevant; and (2) with respect to Mr. Olivera's rebuttal opinions, they are outside the scope of the opinions of Plaintiff's affirmative expert, Britta Moss ("Ms. Moss"), and are therefore improper. [*Id.* at 1–2].

A.      **Fraud-Related Opinions**

Plaintiff first contends that Mr. Olivera's opinions concerning fraud, material representations, or violations of the policy's "Concealment Or Fraud" clause should be stricken because Defendant has not properly asserted an affirmative defense of fraud. [*Id.* at 5–10, 11–12].[4]   Relevant to this argument, on May 15, 2024, Defendant filed its Answer to Plaintiff's First Amended Complaint and Jury Demand and asserted new affirmative defenses based on fraud or misrepresentation.  *See* [Doc. 45 at 11–12 ¶¶ 4–7].  Plaintiff moved to strike those affirmative defenses on June 4, 2024, the same day it filed the Motion to Strike Olivera.  [Doc. 48].  The Court granted the Motion to Strike on June 25, 2024, but also granted Defendant permission to seek leave to amend its Answer. [Doc. 58 at 6, 10 n.2, 12].  On July 8, 2024, with Plaintiff's consent and the Court's leave, Defendant filed an Amended Answer that contains fraud- and misrepresentation-based affirmative defenses.    [Doc. 63 at 11–12 ¶¶ 4–7]; *see also* [Doc. 61; Doc. 62]. Accordingly, Plaintiff's argument that Mr. Olivera's testimony should be stricken because Defendant failed to properly assert fraud-based affirmative defenses is moot.

Nevertheless, Plaintiff continues to argue in its Reply that Mr. Olivera's fraud-based opinions should be excluded because "neither Mr. Olivera's affirmative report nor rebuttal report provide sufficient rationale as to how Plaintiff violated the subject Policy." [Doc. 67 at 4]; *see also* [*id.* at 3–5].  This argument challenging the helpfulness of Mr.

---

[4] Plaintiff also suggests that the opinions should be excluded because it has dropped its breach of contract claim.  *See* [Doc. 47 at 6–7].  But Plaintiff does not develop this assertion or separate this argument from its general contention that exclusion is appropriate due to Defendant's failure to properly assert a fraud affirmative defense.  *See* [*id.*].  Accordingly, the Court does not address this argument.    *See Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs*, 613 F.3d 1229, 1239 (10th Cir. 2010) ("cursory and undeveloped" arguments are deemed waived).

Olivera's opinions was not raised in the Motion to Strike Olivera, which instead addresses Defendant's (now cured) failure to properly plead a fraud affirmative defense.  *See* [Doc. 47 at 6–10, 12].  "Where a party raises . . . new arguments in a reply brief, the Court may either allow the nonmovant to respond in a surreply or disregard the new matters in ruling on the motion."  *LNV Corp. v. Hook*, No. 14-cv-00955-RM-CBS, 2015 WL 5679723, at *3 (D. Colo. Sept. 25, 2015).  Because arguments raised for the first time in a reply brief are generally deemed waived, *White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017), and because Plaintiff's new argument could have been raised in its original Motion, the Court finds the argument to be waived and declines to address it.  The Motion to Strike Olivera is therefore **DENIED as moot** insofar as it seeks to strike Mr. Olivera's opinions related to concealment or fraud.

## B.    Rebuttal Opinions

Next, Blue Ribbon contends that portions of Mr. Olivera's rebuttal report are not proper rebuttal opinions under Rule 26(a)(2)(D) and should be stricken on this basis. [Doc. 47 at 10–11].  Specifically, Mr. Olivera's rebuttal report contains a page with "comments on" the affirmative expert report of Gary Stevens, Defendant's expert on cost estimation.  [Doc. 47-3 at 3]; *see also* [Doc. 49-1 at 5 (Mr. Stevens explaining that he was retained "to review repair/replacement estimates to determine if such estimates are reasonable")].   This portion of Mr. Olivera's rebuttal report essentially endorses Mr. Stevens's opinions and his own opinions, stating that "Mr. Stevens provides a clear and specific breakdown for the numbers in his estimate" and "Mr. Stevens' report strongly supports all the opinions set forth in [Mr. Olivera's] October 11, 2023, opinion letter." [Doc. 47-3 at 3].

"The Federal Rules of Civil Procedure prescribe that an expert rebuttal report is permitted if the evidence therein 'is intended solely to contradict or rebut evidence on the same subject matter' identified by another party's expert." *In re Sandridge Energy, Inc. Sec. Litig.*, No. 5:12-cv-1341-G, 2019 WL 2476742, at *2 (W.D. Okla. June 13, 2019) (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)).  Plaintiff argues that this portion of Mr. Olivera's rebuttal report violates Rule 26 because it does not rebut the opinions of Plaintiff's claims handling expert, Ms. Moss, but instead improperly addresses the unrelated opinions of one of Defendant's *own* affirmative experts on another topic.  [Doc. 47 at 10–11]. Defendant disagrees.  It asserts that Mr. Olivera's opinions—despite explicitly discussing Mr. Stevens's report—are actually a rebuttal to Ms. Moss's opinions about ASIC's claims handling.  [Doc. 60 at 9].  It reasons that because Ms. Moss believes that ASIC failed to meet industry standards by delaying or denying payment of covered benefits, and because Mr. Stevens's report opines about whether there were actually any benefits owed, Mr. Olivera's commentary on Mr. Stevens's report is, in fact, directly responsive to Ms. Moss's opinions and involves the "same subject matter" as Ms. Moss's opinions.  [*Id.*]. In the alternative, Defendant argues that Mr. Olivera's opinions are proper supplemental opinions under Rule 26(e).  [*Id.* at 9–10].

The Court is respectfully unpersuaded by Defendant's attempt to reframe Mr. Olivera's opinions as rebutting Ms. Moss's affirmative opinions, rather than bolstering his own opinions or Mr. Stevens's opinions.  Unlike the first section of his rebuttal report, which explicitly discusses Ms. Moss's report, is titled "Comments on Ms. Moss' report," and is plainly intended to contradict her opinions, *see* [Doc. 47-3 at 1 (emphasis omitted)], the second portion of the report—titled "Comments on Mr. Stevens' Report"—does not

mention Ms. Moss's report or her opinions whatsoever.  [*Id.* at 3 (emphasis omitted)].
Rather, it addresses Mr. Stevens's report, which does not contain claims-handling
opinions.  *See* [*id.*].  In other words, this portion of the report is not an opinion "intended
solely to contradict or rebut evidence on the same subject matter identified by another
party under Rule 26(a)(2)(B) or (C)."  Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added).
Moreover, the substance of this portion of the report is not proper rebuttal testimony, as
it essentially compliments Mr. Stevens's report and explains how, in Mr. Olivera's view,
Mr. Stevens's correct opinions bolster his own opinions.  [Doc. 47-3 at 3].  Indeed, expert
opinions that "attempt to support or shore up the opinion of a different expert designated
by the same party" are improper.  *Puskarich v. Burlington N. Santa Fe Ry. Co.*, No. 2:19-
cv-00150-NDF, 2022 WL 2231177, at *2 (D. Wyo. Mar. 24, 2022).  Nor may a party "offer
testimony under the guise of 'rebuttal' only to provide additional support for his case in
chief."  *Stanfield v. Dart*, 1:10-cv-06569, 2013 WL 589222, at *3 (N.D. Ill. Feb. 14, 2013).

Defendant also argues that this portion of Mr. Olivera's report is simply a
supplement under Rule 26(e), arguing that Mr. Stevens's report "contained new
information which shed light on Plaintiff's misrepresentations and concealments of the
repair costs" and "[b]ased on his review of the new information contained in Mr. Stevens'
report," Mr. Olivera provided supplemental opinions in his rebuttal report.  [Doc. 60 at 10].
Defendant does not identify the new information on which these new opinions are
purportedly based.  [*Id.*].

"A plain reading of Fed. R. Civ. P. 26(e)(1) suggests that a supplemental expert
report should be based upon additional or corrective information that was not available at
the time of the expert's original report."  *S.E.C. v. Nacchio*, No. 05-cv-00480-MSK-CBS,

2008 WL 4587240, at *3 (D. Colo. Oct.15, 2008). "Highlighting previous testimony," like

Mr. Olivera does here, "is not proper supplementation under Rule 26(e)." *Rodgers v.*

*Beechcraft Corp.*, 759 F. App'x 646, 663 (10th Cir. 2018); *see also Ellis v. Hobbs Police*

*Dep't*, No. 2:17-cv-01011-KWR-GBW, 2020 WL 3429788, at *2 (D.N.M. June 23, 2020)

(supplementation is not permitted to bolster an expert's opinions). Moreover, the Court

cannot conclude that the challenged opinions are based on new information previously

unavailable to Mr. Olivera, as Defendant contends. Mr. Olivera's rebuttal report states:

> Mr. Stevens also provided a detailed explanation of the significant over
> changes that were listed in the estimates prepared by Blue Ribbon Exteriors
> & Construction ("BREC"). The existence of those overcharges confirms that
> the claims handling by ASI[C] in this case was reasonable and consistent
> with Colorado insurance industry standards. It was certainly reasonable for
> ASI[C] to fully investigate this claim that ballooned from an initial estimate
> of $45,513.71, to $209,386.15.
>
> The evidence provided in Mr. Stevens' report now raises a significant issue.
> Because the insureds have entered into a purported assignment with BREC
> regarding the claim, BREC would likely be the insured under the terms of
> the policy. If so, BREC's actions of over charging likely implicate the
> "Concealment Or Fraud" clause in the policy. . . . It is my opinion that it
> would be consistent with Colorado insurance industry standards for an
> insurance company to deny any further payments to the insureds because
> BREC has "concealed or misrepresented material facts and circumstances"
> regarding the claim.

[Doc. 47-3 at 3]. But Mr. Olivera's affirmative report *also* discusses the alleged

overcharges and their implications on Defendant's claims-handling conduct. After

discussing in detail how Blue Ribbon's estimates went from $45,513.71 to $102,822.59

to $209,386.16, *see* [Doc. 47-2 at 3–7], Mr. Olivera states:

> From the chronology listed above it is clear that the insured and their
> representatives provided increased damage estimates throughout the
> claims process, both before and after the lawsuit was filed by Blue Ribbon.
> It is unusual for a water leak claim such as this to expand from an initial
> estimate from the insured of approximately $36,000 to over $200,000 with
> more damage and increased cost being claimed in each new estimate. It

was reasonable and within Colorado insurance industry standards for ASI[C] to carefully review the new damages claims that were submitted. ASI[C]'s reluctance to pay all the costs being claimed was justified and ASI[C] acted properly in investigating those costs.

Moreover, there is a significant issue in this claim of possible misrepresentation on the part of the insureds representatives [sic] based on some of the documents obtained by subpoenas, that the damages were claimed in excess of costs actually incurred. Under the terms of the . . . policy, the misrepresentation language would likely apply to Blue Ribbon as the plaintiff in this case. Some of the estimates from the insureds' representative also contain charges that are clearly excessive and unreasonable, such as a 25% charge for profit and overhead.

[*Id.* at 8].

Based on this language, it is clear that Mr. Olivera had information and/or evidence at the time he submitted his affirmative report from which he could (and did) draw the conclusions that (1) Plaintiff was overestimating its damages; (2) this overestimation could give rise to "possible misrepresentation on the part of" Plaintiff; and (3) Plaintiff's alleged overestimation justified Defendant's decision to investigate the claim before payment. Neither Mr. Olivera nor Defendant identify the new "evidence provided in Mr. Stevens' report" from which they claim Mr. Olivera drew the conclusion, for the first time, that the "Concealment Or Fraud" provision of the policy—which Mr. Olivera clearly had in his possession at the time he provided his affirmative report, *see* [*id.*]—may be relevant to this case, or explain why this conclusion could not have been reached in the original report. Mr. Olivera's discussion of Mr. Stevens's opinions is not proper supplementation under Rule 26(e) and is subject to exclusion under Rule 37(c). *Cook*, 580 F. Supp. 2d at 1169.

The affirmative expert deadline in this case was October 11, 2023. [Doc. 28 at 1]. Because the challenged opinions from Mr. Olivera are not proper rebuttal opinions or

supplemental opinions, the inclusion of those opinions in his rebuttal report violates Rule 26. Fed. R. Civ. P. 26(a)(2)(D). Defendant thus bears the burden to show that this violation was substantially justified or harmless. *Sender*, 225 F.R.D. at 655. Defendant makes no argument that the violation should be excused using the *Woodworker's* factors or that another sanction short of exclusion is more appropriate to remedy the violation. *See generally* [Doc. 60]. Accordingly, the Motion to Strike Olivera is respectfully **GRANTED** to the extent it seeks to strike the section of Mr. Olivera's February 12, 2024 report titled "Comments on Mr. Stevens' Report."

## III.    The Motion to Strike Stevens

According to Mr. Stevens's report, he was "asked to conduct a review of estimates supplied by" Plaintiff to determine if those estimates were reasonable. [Doc. 49-1 at 5]. He discusses Plaintiff's "most recent estimate submitted in connection with [its] lawsuit," i.e., Plaintiff's April 2023 estimate that repairs would cost $209,386.15, *see* [*id.* at 6], and formulates a number of opinions, summarized as follows: Plaintiff's estimations were unreasonably excessive; Plaintiff misrepresented overcharges; and Defendant "grossly" overpaid based on those erroneous overcharges. [*Id.* at 5–6, 51–52].

Plaintiff argues that Mr. Stevens's report should be stricken in its entirety because his opinions are irrelevant to the remaining bad faith claims in this case.[5] [Doc. 49 at 1]. Specifically, it asserts that because the reasonableness of an insurer's conduct is based on the information it had when it made its coverage decision, and because the estimates

---

[5] Plaintiff also argues that Mr. Stevens's opinions should be excluded as irrelevant because Defendant did not properly raise a fraud affirmative defense. [Doc. 29 at 1–2]. For the reasons discussed above, this argument was mooted by Defendant's Amended Answer.

evaluated in Mr. Stevens's report were presented to Defendant after it denied payment, they have no relevance to the bad faith claims. [*Id.* at 5]. Plaintiff also asserts that Mr. Stevens's opinions were "produced specifically to attack [its] breach of contract claim," and argues that because this claim was withdrawn, this provides further support to its argument that Mr. Stevens's opinions are irrelevant to what remains of this case. [*Id.*].

Defendant disagrees. It maintains that Mr. Stevens's opinions remain relevant to Plaintiff's bad faith claims because Plaintiff seeks damages for alleged delay or denial of covered benefits, and—according to Defendant—Mr. Stevens's opinions support Defendant's position that the payments demanded by Plaintiff were not actually owed under the policy (and were therefore not unreasonably delayed or denied). [Doc. 59 at 4–5]. Defendant also contends that these opinions are relevant to its fraud-based affirmative defenses. [*Id.* at 8].

Plaintiff is correct that, for common law bad faith, the reasonableness of a decision to deny insurance benefits "must be evaluated based on the information before the insurer at the time of that decision." *State Farm Mut. Auto. Ins. Co. v. Reyher*, 266 P.3d 383, 390 (Colo. 2011) (quotation omitted). And a common law bad faith claim is not necessarily premised on the existence of coverage. Indeed, "[b]ad faith breach of an insurance contract encompasses the entire course of conduct" between the insured and the insurer, *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003), and "Colorado recognizes the viability of a [common law] claim of bad faith even if the express terms of the contract have been honored by the insurer," *Dunn v. Am. Fam. Ins.*, 251 P.3d 1232, 1235 (Colo. App. 2010). But for *statutory* bad faith claims, a plaintiff must show "(1) <u>benefits were owed under the policy</u>; and (2) defendant unreasonably delayed or

19

denied payment of plaintiff's claim." *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1201 (D. Colo. 2018) (emphasis added); *see also* Colo. Rev. Stat. § 10-3-1115(1)(a) ("A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.").  "[W]here no benefits are owed, then payment of those benefits cannot, as a matter of law, have been unreasonably delayed to the insured or denied by the insurer." *Keller v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-00474-CMA-KAS, 2023 WL 6048790, at *9 (D. Colo. Sept. 15, 2023), *report and recommendation adopted*, 2023 WL 7458357 (D. Colo. Oct. 2, 2023).  Therefore, the Court respectfully disagrees with Plaintiff that Mr. Stevens's opinions became irrelevant when Plaintiff voluntarily dismissed its breach of contract claim, as Mr. Stevens's opinions may be relevant to a determination of whether there was coverage under the policy.

Moreover, the Court finds that Mr. Stevens's testimony may be relevant to Defendant's affirmative defenses related to fraud and/or misrepresentation.  Defendant asserts, inter alia, that Plaintiff's claims are barred by Plaintiff's alleged violation of the policy's "Concealment Or Fraud" clause, *see* [Doc. 63 at 11 ¶ 4], which provides that Defendant will not provide coverage to any insured party who has "[c]oncealed or misrepresented any material fact or circumstances" before or after a loss, [Doc. 50-14 at 26].  Mr. Stevens's opinions that Blue Ribbon misrepresented its estimates are relevant to ASIC's affirmative defenses and are thus admissible.

Finally, to the extent Plaintiff argues for the first time in its Reply that Mr. Stevens is not qualified to render opinions about fraud or misrepresentation, *see* [Doc. 66 at 1–2, 5–6], the Court declines to consider this argument, which could have been raised earlier

and has been waived, *White*, 862 F.3d at 1067.  The Motion to Strike Stevens is respectfully **DENIED**.

## IV.  The Motion to Exclude Moss

Plaintiff has disclosed Britta Moss as an expert in "insurance industry standards, practices, and norms for claim handling."  [Doc. 46-17 at 1].  Ms. Moss's expert report contains three primary opinions:

> 1.  ASIC failed to meet industry standards, practices, and norms when it used CRE 408 compromise offers requiring a release for [the insured] to receive payment for undisputed [actual cash value ("ACV")] amounts owed for their first party property damage claim.
>
> 2.  ASIC failed to meet industry standards, practices, and norms when it unreasonably delayed payments of undisputed ACV amounts.
>
> 3.  ASIC failed to meet industry standards, practices, and norms when it unreasonably delayed, then unreasonably failed, to issue payment for electrical code upgrade work and supplemental ACV payments for cabinetry and flooring repair costs.

[Doc. 50-12 at 11–13].  Defendant challenges each of these opinions.  [Doc. 50 at 5].

### A.  Undisputed Covered Benefits

First, ASIC contends that the first and second opinions, to the extent Ms. Moss opines that Defendant failed to pay "undisputed ACV amounts," should be excluded as contrary to Colorado law insofar as they rely on Defendant's settlement offers to conclude that Defendant acted unreasonably.  [*Id.* at 7].  Relevant here, insurance companies have a duty to not unreasonably delay or deny payment of undisputed covered benefits, even if there are other portions of an insurance claim that remain in dispute.  *State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 502 (Colo. 2018).  Defendant argues that, under Colorado law, settlement offers do not constitute a concession that those amounts were owed and are not proof of undisputed covered benefits.  [Doc. 50 at 8–9].  Additionally, it

contends that its settlement offers are inadmissible under Rule 408 of the Colorado and Federal Rules of Evidence, and because Ms. Moss's first and second opinions rely on inadmissible evidence, those opinions should be excluded. [*Id.* at 9–10].

Blue Ribbon responds that Ms. Moss's opinions are supported by admissible evidence and consistent with Colorado law. [Doc. 57 at 3]. It asserts that Ms. Moss's opinions are not based solely on Defendant's settlement offers but are also based on Defendant's claim notes, as well as the fact that Defendant paid Plaintiff those amounts "without the need for further documentation from the public adjuster." [*Id.* at 4–6]. According to Plaintiff, this shows that Defendant's "'concessions' were covered by the policy and undisputed." [*Id.* at 6]. Plaintiff does not address Defendant's Rule 408 argument. *See generally* [*id.*].

It is clear that, under Colorado law, neither Plaintiff nor Ms. Moss may rely on Defendant's settlement offers to assert that Defendant failed to pay undisputed covered benefits. "Colorado law . . . prohibits the conclusion that [an insurer's] initial settlement offer represents an admission that the amount of the offer was the amount of benefits owed to [the insured]." *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 988 (Colo. App. 2015), *aff'd*, 418 P.3d 501 (Colo. 2018). In *Fisher*, the Colorado Court of Appeals stated that the trial court had "correctly concluded" that the expert's opinion—that an insurer acted unreasonably "when it failed to advance the amount of its initial settlement offer"—was contrary to Colorado law and should be excluded under Rules 403, 408, and 702 of the Colorado Rules of Evidence. *Id.* at 994. *See also* Fed. R. Evid. 408 (settlement offers are not admissible to prove the "amount of a claim that was disputed as to validity

or amount").[6]    Other courts have held similarly.  *See, e.g.*, *Signature Dev. Cos., Inc. v. Royal Ins. Co. of Am.*, 230 F.3d 1215, 1223 (10th Cir. 2000) ("Compromise or settlement offers are not admissions of liability."); *Cooper v. Shelter Gen. Ins. Co.*, 653 F. Supp. 3d 873, 879 (D. Colo. 2023) (collecting cases).  Therefore, to the extent that Ms. Moss relies on Defendant's settlement offers to calculate "undisputed ACV amounts," *see, e.g.*, [Doc. 50-12 at 11 ("[O]nce ASIC agreed to additional the [sic] higher allowances [i.e., once Defendant made the settlement offers], the ACV of those allowances bec[a]me undisputed and [we]re owed as a supplemental ACV payment")], those opinions will be excluded.

The next question, then, is whether Plaintiff is correct that Ms. Moss may rely on ASIC's claim notes about "anticipated concessions" to form her opinion that Defendant unreasonably refused to pay undisputed covered benefits.  Plaintiff contends that Ms. Moss's opinions about undisputed benefits are not based solely on the settlement offers, but are also based on ASIC's claim notes and internal evaluations.  [Doc. 57 at 4–6]. Specifically, Plaintiff points to notes from August 18, 2021 and September 30, 2021, wherein ASIC's claims handler documented "[a]nticipated [c]oncessions" in the claim file. *See* [Doc. 57-1 at 2; Doc. 57-2 at 1 (listing concessions ASIC was willing to make for a signed release)].  The Court observes that while Ms. Moss mentions the claim notes in

---

[6] "The admissibility of evidence in diversity cases in federal court is generally governed by federal law."  *McCammond v. Schwan's Home Serv., Inc.*, 791 F. Supp. 2d 1010, 1011 (D. Colo. 2011).  The Federal Rules of Evidence govern the admissibility of evidence in this diversity case, and "state law is pertinent only if and to the extent the applicable Rule makes it so or it provides the federal court with guidance in the construction and application of the Evidence Rules."  Wright & Miller, 19 Federal Practice & Procedure § 4512 (3d ed. June 2024 update).  However, because Colorado Rule 408 and Federal Rule 408 are identical, the Court finds Colorado cases applying Rule 408 to be persuasive authority.

her timeline of the case, her substantive opinions do not mention them.  *See* [Doc. 50-12 at 3–6, 11–12].

A few courts have addressed this issue, albeit in slightly different contexts, and appear to uniformly hold that internal evaluations do not constitute proof of an undisputed amount subject to *Fisher* payments.  *See, e.g.*, *Hallaren v. Geico Cas. Co.*, No. 20-cv-03562-NRN, 2021 WL 4133915, at *7 (D. Colo. Sept. 10, 2021) ("[T]he Court finds that a claim evaluation is not admissible evidence of an undisputed amount that must be paid under an insurance policy."); *Nyborg v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01918-RM-KLM, 2021 WL 662305, at *7 (D. Colo. Feb. 19, 2021) ("[A]n insurer's evaluation of a claim at any particular time does not constitute an undisputed amount which must be paid under the policy."), *report and recommendation adopted*, 2021 WL 1115936 (D. Colo. Mar. 24, 2021).  Most recently, the Colorado Court of Appeals found that it was error for the lower court to rely on an insurance company's internal claim evaluation to conclude that portions of the insured's claim were undisputed.  *See Fear v. GEICO Cas. Co.*, 532 P.3d 382, 386 (Colo. App. 2023), *cert. granted*, No. 23SC333, 2024 WL 778139 (Colo. Feb. 26, 2024) (granting certiorari as to "[w]hether an insurer's internal settlement evaluation is admissible as evidence of undisputed 'benefits owed' under" *Fisher*).  The Colorado court's reasoning was twofold:  first, the damages in dispute were non-economic damages, which the court described as "inherently subjective" and "difficult to quantify and determine."  *Id.* (quotation omitted).  Second, the court concluded that relying on an internal assessment of damages "would run counter to the limitations of [Colorado Rule of Evidence] 408, which expressly prohibits admitting into evidence the amount of a settlement offer to prove the 'amount of a claim that was disputed.'"  *Id.*

Plaintiff argues that this authority is materially distinguishable from the instant case because these cases involve (1) automobile insurance and (2) non-economic damages. [Doc. 57 at 4–5].  It argues that these cases show only that "non-economic damages like pain and suffering are distinctly different from economic damages for the purpose of claim evaluation" and that, under Colorado law, "non-economic damages are purely subjective and not subject to an undisputed *Fisher* payment."  [*Id.* at 5].

The Court acknowledges that in *Fear*, *Hallaren*, and *Nyborg*, the courts relied at least in part on the indeterminate or subjective nature of non-economic damages to hold that internal evaluations do not amount to admissions of undisputed amounts.  But the *Fear* court also relied on Rule 408 in its ruling, explaining that even though the insurance company's internal evaluation of liability "was not itself a 'settlement offer,' the two were inextricably intertwined, as will be true in virtually every case."  *Fear*, 532 P.3d at 386.  In addition, Plaintiff has not directed this Court to any case *permitting* the admission of internal claim evaluations to prove undisputed economic damages, and the Court finds that the principles discussed in the above cases and the principles underlying Rule 408 remain applicable to this case and economic damages.  Under Rule 408, settlement offers are inadmissible to prove the amount of a disputed claim, and Defendant's claim notes setting forth possible "concessions," which are "inextricably intertwined" with its settlement offers, are similarly inadmissible.  Accordingly, though it is unclear from Ms. Moss's report whether her opinions are actually based on the claim valuation notes, the Court will preclude Ms. Moss from forming opinions about undisputed covered benefits based on ASIC's internal evaluation notes.  This portion of the Motion to Strike Moss is respectfully **GRANTED**.

B.    **Conditional Settlement Offers**

Ms. Moss also opines that the very fact that ASIC conditioned its settlement offers on Plaintiff signing a release was contrary to industry standards.  [Doc. 50-12 at 11].[7] Defendant argues that this opinion should "be excluded as unsupported and contrary to law."  [Doc. 50 at 10].  It argues that Ms. Moss cites no source demonstrating that insurance industry standards prohibit insurance companies from conditioning their settlement offers on a release and that there is "no Colorado authority" prohibiting this practice.  [*Id.* at 10–11].

The Court is respectfully unpersuaded by Defendant's argument.  Defendant cites no authority holding that an insurance industry expert must cite some identifiable "source" establishing an industry standard to reliably opine about that standard.  It is "fairly common" for parties to rely on expert testimony to establish industry standards. *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 926 (D. Colo. 2017); *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004) ("The aid of expert witnesses is often required in order to establish objective evidence of industry standards.").  Indeed, in the Court's experience, insurance experts routinely rely on their experience in the industry to articulate industry standards.  *See, e.g.*, *O'Sullivan*, 233 F. Supp. 3d at 926.  And an expert witness is permitted to rely "solely on [her] experience" in forming her opinions. *United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009).[8]  This appears to be

---

[7] The Court does not construe this portion of Ms. Moss's opinion as falling under Rule 408 because Ms. Moss does not appear to be using the settlement offers to prove the validity or amount of a disputed claim; rather, she uses the settlement offers to opine that the conditional nature of the offers was contrary to industry standards.

[8] In *Nacchio*, the Tenth Circuit explained that an expert may rely solely on her experience so long as the expert explains how her experience led her to her conclusion, why her experience is a sufficient basis for the opinion, and how her experience is reliably applied

what Ms. Moss did here—in her report, Ms. Moss states that her opinions were formed based on her 30 years of experience in the insurance industry. [Doc. 50-12 at 1–2]. She maintains that "ASIC's presentation of compromised offers of settlement requiring a release was improper and does not conform with industry standards, practices, and norms" because "[a] release would unfairly cut off [the insured]'s ability to recover any future scope or pricing changes that might occur, any additional damages discovered, and reimbursement of [replacement cash value] upon completion of repairs." [*Id.* at 12]. And in her deposition, she explained:

> [T]rying to apply this type of negotiation and -- and resolution using a release is just -- that is not common practice in the industry for a property damage claim like this. You know, if it had been, you know, months and months down the road and we're still arguing over, like, the same -- the same things and then we ultimately try to negotiate a settlement like that, I could see where, you know, that might possibly be the case. But at this point, this is still well within the reasonable amount of time that I would expect to be going back and forth between contractor and insurance company in getting that -- that estimate finalized for proper actual cash value basis.

[Doc. 50-13 at 168:9–23]. Ms. Moss's reliance on her industry experience does not render this opinion inadmissible.

Nor is the Court persuaded by Defendant's argument that there is "no Colorado authority prohibiting an insurer from requiring a release" in connection with a settlement offer. *See* [Doc. 50 at 11]. Although some insurance industry standards are set forth in Colorado statutes or caselaw, *see Gribowski v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-03115-MEH, 2022 WL 16855688, at *4 (D. Colo. Nov. 10, 2022), an insurance industry

---

to the facts of the case. 555 F.3d at 1258. Defendant does not challenge Ms. Moss's opinions on the basis that she failed to adequately tie her experience to her opinions; instead, it argues only that Ms. Moss's opinion should be excluded for failure to identify a source for the articulated industry standard. *See generally* [Doc. 50].

standard can exist outside of written law.  To the extent Defendant takes issue with the correctness of Ms. Moss's statement that it is not standard in the insurance industry to require a release in exchange for settlement, it can challenge that opinion on cross-examination.  *See O'Sullivan*, 233 F. Supp. 3d at 926–27 (expert's lack of "clear[] citations to industry publications" were relevant to the weight or credibility of the expert's opinions, but did not prevent him from testifying); *cf. Hahn v. Ohio Sec. Ins. Co.*, No. 4:22-cv-00369-GKF-SH, 2023 WL 9230112, at *4 (N.D. Okla. Aug. 31, 2023) (concluding that similar arguments went to the weight, not the admissibility, of expert testimony).  This portion of the Motion to Exclude Moss is **DENIED**.

### C.    Electrical Code Upgrade Work, Cabinetry, and Flooring

Ms. Moss states that ASIC's explanation for not including electrical code upgrade work in its estimate—that there was no damage to the property's wiring—was "insufficient" because the policy's "Ordinance or Law additional coverage . . . does not require that the item subject to the upgrade requirement be damaged," only that an upgrade be required to comply with local building codes.  [Doc. 50-12 at 12–13].  She also asserts that ASIC "failed to pay agreed upon amounts for cabinetry and flooring." [*Id.* at 13].  ASIC argues that these opinions are not supported by sufficient facts or data, not based on reliable methods, and unhelpful to the jury.  [Doc. 50 at 11].[9]

---

[9] In this section, ASIC also challenges Ms. Moss's opinion that "ASIC unreasonably delayed payment of ACV benefits related to sheathing, baseboard, countertop and cabinets."  [Doc. 50 at 11]; *see also* [Doc. 50-12 at 12 ("On August 24, 2021, ASIC agreed to increased allowances for sheathing, baseboard, and countertop replacement in the amount of $5,364.  However, ASIC did not issue a supplemental payment that included these items until December 8, 2021, a delay of approximately three (3) months. . . . ASIC's failure to timely issue payment for undisputed ACV amounts was unreasonable and did not conform with industry standards, practices, and norms for claim handling.")].  As explained above, Ms. Moss cannot rely on ASIC's settlement offers or claim notes to

***Electrical Code Upgrade Work.*** Defendant contends that Ms. Moss's opinion that ASIC acted unreasonably by not paying for electrical code upgrade work should be excluded because it fails to consider the policy language. [*Id.* at 12]. Specifically, the policy provides Ordinance or Law coverage for "the increased costs [the insured] incur[s] due solely to the enforcement of an ordinance or law," *see* [Doc. 50-14 at 15 (emphasis added)], and because Plaintiff never actually incurred any costs for electrical work, Defendant argues that no benefits for electrical work were ever owed, [Doc. 50 at 12]. It contends that Ms. Moss acknowledged as such in her deposition and "backtracked on her opinion," [*id.*]:

> Q. Sitting here today, though, do you still believe -- is it still your opinion that ASIC unreasonably delayed or denied payment of the amount for electrical?
>
> . . .
>
> A. Unless I could see, you know, any additional documentation showing the completion of -- of the work if it has not yet been completed under the terms of the policy, it would not yet be owed.

[Doc. 50-13 at 213:9–17]. And because Ms. Moss acknowledged that she never saw any documentation showing that Plaintiff actually incurred costs for electrical code work, [*id.* at 211:3–212:10], Defendant asserts that Ms. Moss's opinion is unsupported and unreliable, [Doc. 50 at 12].

Plaintiff's Response attempts to reframe Ms. Moss's opinions, suggesting that the opinions are not based on the lack of payment itself, but on Defendant's failure to communicate about the lack of payment. [Doc. 57 at 8]. Plaintiff's argument relies on

---

opine that ASIC failed to pay undisputed ACV amounts. The Court has thus already excluded this opinion and does not address it here.

Ms. Moss's claim timeline, which shows that on September 23, 2022, ASIC desk adjuster Raul Gonzalez "requested and received authority to issue additional payment of $16,730 for the electrical code upgrade work" and requested "a breakdown of the electrical work." [Doc. 50-12 at 9].  But Mr. Gonzalez apparently never responded after he was sent the cost breakdown, as he had left his employment with ASIC.  [*Id.* at 10].  Plaintiff asserts that Mr. Gonzalez "indicated that payment would be issued upon receipt of an 'electrical breakdown,'" but ASIC never issued payment and never communicated why it was not issuing payment.  [Doc. 57 at 8].  According to Plaintiff, Ms. Moss's opinions about electrical code upgrades are based on *this* conduct, which Plaintiff contends amount to "unfair claim settlement practices as described in C.R.S. [§§] 10-3-1104(h)[](II) and (XIV) [that are] admissible as an unreasonable denial of benefits for the electrical work."  [*Id.* at 9]; *see also* Colo. Rev. Stat. § 10-3-1104(h)(II), (XIV) (defining unfair claim settlement practices to include failure to communicate and failure to explain the basis for denial of a claim).

Plaintiff's argument is not supported by Ms. Moss's report, which does not tie her opinion about electrical work to a lack of communication or some expectation that payment would certainly be made after a breakdown of costs was provided.  *See* [Doc. 50-12 at 12–13].  Although Ms. Moss does state that ASIC's explanation for excluding electrical code upgrade work from its estimate was "insufficient," [*id.* at 13], this opinion is not what Defendant challenges; rather, it challenges Ms. Moss's opinion that ASIC failed to meet industry standards when it delayed or denied payment for the work.  [Doc. 50 at 11].

The Court agrees with Defendant that this opinion is not adequately supported. Defendant argues that the policy only permits Ordinance or Law coverage if costs are actually incurred, [*id.* at 12], and Plaintiff does not dispute that interpretation, *see generally* [Doc. 57]. And the Court notes that no Party makes arguments about this provision in their motions for summary judgment. *See* [Doc. 70; Doc. 71]. The Court thus adopts the Parties' agreed-upon interpretation of the policy. *See Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 100 F. Supp. 3d 1099, 1101 (D. Colo. 2015) ("Under Colorado law, questions of coverage under an insurance policy are generally matters of law reserved for the court."). Moreover, Plaintiff does not dispute that there were no costs incurred for electrical upgrade work. *See generally* [Doc. 57]. Because Ms. Moss's opinion about denial of payment is contrary to the plain language of the policy, this opinion is not reliable. This portion of the Motion to Strike Moss is **GRANTED** and this opinion will be excluded.[10] *See Slavin v. Garrison Prop. & Cas. Ins. Co.*, No. 14-cv-01839-LTB-KMT, 2017 WL 2928030, at *8 (D. Colo. July 10, 2017) (excluding opinions that "rest[ed] on an implausible interpretation of policy language"), *aff'd*, 805 F. App'x 561 (10th Cir. 2020); *Chateau Vill. N. Condo. Ass'n v. Am. Fam. Mut. Ins. Co.*, No. 14-cv-01583-PAB-NYW, 2016 WL 1444626, at *2 (D. Colo. Apr. 13, 2016) (precluding expert witness from offering "coverage opinions that [were] contrary to the Court's construction of the policy").

***Cabinetry and Flooring.*** ASIC also challenges Ms. Moss's opinion that ASIC acted unreasonably because it "failed to pay agreed upon amounts for cabinetry and flooring" and that "payment of at least $2,453 has been unreasonably withheld." *See*

---

[10] To be clear, the Court does not exclude Ms. Moss's opinion that ASIC's explanation for its estimate was insufficient. [Doc. 50-12 at 12–12].

[Doc. 50-12 at 13].  For purposes of background, Ms. Moss's report contains the following timeline of events:  In February 2022, ASIC approved and issued a payment that allotted $11,120 for cabinetry work.  [Doc. 50-12 at 7].  Later that month, the insured's public adjusting firm requested an additional $1,039 for cabinetry "due to [a] price increase." [*Id.*].  Then, ASIC hired FKS Insurance Services, LLC ("FKS") in May 2022 to estimate the entire claim.  [*Id.* at 8].  And on August 5, 2022, Mr. Gonzalez "explained a supplemental ACV payment of $17,972," which was calculated by subtracting ASIC's prior payments from FKS's estimate.  [*Id.* at 9].  Ms. Moss states that FKS's estimate, when compared to "ASIC's [then] most recent estimate 2/5/22)," allocated approximately $1,591 less for flooring and $862 less for cabinetry (for a total of $2,453) than ASIC had. [*Id.* at 9].

In light of these events, Ms. Moss opines that ASIC "failed to pay agreed upon amounts for cabinetry and flooring" because "at least $2,453 has been unreasonably withheld."  [*Id.* at 13].  Defendant argues that this opinion should be excluded because Ms. Moss lacks any factual basis for it.  [Doc. 50 at 13].  In support, Defendant relies on Ms. Moss's deposition testimony, wherein she stated that she was never made aware of the actual cost of those repairs, [Doc. 50-13 at 203:14–24, 205:5–10]; she had not calculated and was not aware of how much ASIC had paid out on the claim for those repairs, [*id.* at 204:24–205:4]; she did not know "where things stand as far as payments" for these repairs, [*id.* at 203:2–8]; and that the remaining payments owed "would just possibly be electrical work," [*id.* at 203:9–13].  ASIC contends that because Ms. Moss neglected to review or consider whether payments for cabinetry repairs were actually

owed, her opinion is based on incomplete information and is unreliable.  [Doc. 50 at 13–14].  Plaintiff does not respond to this argument.  *See* [Doc. 57 at 7–9].

Plaintiff provides no defense of Ms. Moss's opinion.  *See generally* [Doc. 57].  And Ms. Moss's expert report does little to help the Court track the reasoning or basis of her conclusion, as it provides only minimal discussion of ASIC's purported February 5, 2022 estimate.  Ms. Moss's opinion appears to be based on the discrepancy between what she views as an amount that "had already been agreed upon"—the amount apparently reflected in ASIC's February 2022 estimate—and a lower amount reflected in the FKS report, which she states "remains unpaid as of the date of this report based on the documentation provided for review."  *See* [Doc. 50-12 at 13].  But despite actual costs being relevant to her opinion, Ms. Moss concedes that she has no knowledge of Blue Ribbon's actual costs regarding the flooring or cabinetry, [Doc. 50-13 at 203:2–24], and her expert report does not identify any documentation she relies upon to conclude that the subject amounts were "agreed upon," *see* [Doc. 50-12 at 13].  And although Ms. Moss's deposition statements indicating a lack of factual basis for her opinions were highlighted by ASIC in its Motion, Blue Ribbon makes no argument defending the reliability of Ms. Moss's opinions.  There is simply an insufficient factual basis to support Ms. Moss's conclusion that ASIC withheld at least $2,453 that Plaintiff was actually owed (or for how long).  For these reasons, this portion of the Motion to Strike Moss is respectfully **GRANTED**.

    D.    **Legal Conclusions**

Finally, to the extent Defendant seeks to preclude Ms. Moss from opining that ASIC acted unreasonably, [Doc. 50 at 14], the Court will grant the Motion.  An expert may not

"state legal conclusions drawn by applying the law to the facts." *A.E. ex rel. Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991). "[S]uch ultimate conclusions would not be helpful to the jury and would improperly intrude on its fact-finding function." *O'Sullivan*, 233 F. Supp. 3d at 929. Courts routinely preclude experts from opining about whether an insurance company acted reasonably or unreasonably in its claims handling. *See, e.g., id.* (excluding opinion "that Geico's conduct was unreasonable or insufficient as a matter of law"); *Masters v. Safeco Ins. Co. of Am.*, No. 20-cv-00631-PAB-NRN, 2021 WL 4317112, at *10 (D. Colo. Sept. 23, 2021) (excluding opinion that the "defendant's conduct was unreasonable" as an improper legal conclusion). Accordingly, while Ms. Moss may testify as to insurance industry standards and why she believes ASIC failed to comply with those standards—subject to the Court's rulings herein—she may not draw an ultimate conclusion and testify about whether she believes ASIC acted unreasonably or acted in bad faith. This portion of the Motion to Exclude Moss is **GRANTED**.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) Defendant's Motion to Exclude the Testimony of Kurt Smith Pursuant to Fed. R. Evid. 702 and/or 403 [Doc. 46] is **GRANTED**;

(2) Plaintiff's Motion to Strike the Testimony of Keith R. Olivera Pursuant to FRE 702 and FRCP 26(a)(2)(D) [Doc. 47] is **GRANTED in part** and **DENIED as moot in part**;

(3) Plaintiff's Motion to Strike the Testimony of Gary Stevens Pursuant to FRE 702 [Doc. 49] is **DENIED**; and

(4)    Defendant's Motion to Exclude the Testimony of Britta Moss Pursuant to

Fed. R. Evid. 702 [Doc. 50] is **GRANTED in part** and **DENIED in part**.


DATED:  December 2, 2024                          BY THE COURT:

_____

Nina Y. Wang
United States District Judge