## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Nina Y. Wang

Civil Action No. 23-cv-00017-NYW-CYC

MORDHORST CLEANING, LLC, d/b/a BLUE RIBBON EXTERIORS &
CONSTRUCTION,

      Plaintiff,

v.

AMERICAN STRATEGIC INSURANCE CORP.,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Defendant's Motion for Summary Judgment, [Doc. 70], and Plaintiff's Motion for Summary Judgment on Defendant's Fourth, Fifth, Sixth, and Seventh Affirmative Defenses ("Plaintiff's Motion for Partial Summary Judgment"), [Doc. 71]. The Court has reviewed the Motions and concludes that oral argument would not materially assist in resolving the matters before the Court. For the reasons herein, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED as moot**.

### BACKGROUND

This case arises out of an insurance coverage dispute between Plaintiff Mordhorst Cleaning, d/b/a Blue Ribbon Exteriors & Construction ("Plaintiff" or "Blue Ribbon"), and Defendant American Strategic Insurance Corp. ("Defendant" or "ASIC"). *See* [Doc. 41; Doc. 63]. In short, ASIC insured a property that experienced water damage in 2021. [Doc. 41 at ¶¶ 6, 8, 13]. The insureds filed a claim with ASIC and signed a document

assigning the claim to Blue Ribbon.  [*Id.* at ¶¶ 15–16, 58].  Blue Ribbon subsequently

sued ASIC for breach of contract, unreasonable delay or denial of benefits under Colo.

Rev. Stat. §§ 10-3-1115 and -1116 (or "statutory bad faith"), and common law bad faith,

alleging that Defendant failed to pay benefits owed under the insurance policy and acted

unreasonably in its handling of the insurance claim.  [Doc. 3 at ¶¶ 62–78].  Plaintiff later

filed an Amended Complaint that dropped the breach of contract claim.  [Doc. 41 at ¶¶ 60–

69].

Both Parties have filed summary judgment motions.  ASIC seeks judgment in its

favor on both of Plaintiff's bad faith claims.  [Doc. 70].  Blue Ribbon asks for judgment in

its favor on Defendant's fourth, fifth, sixth, and seventh affirmative defenses.  [Doc. 71].

The Motions are fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational

trier of fact could resolve the issue either way.  A fact is material if under the substantive

law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*,

649 F.3d 1189, 1194 (10th Cir. 2011) (cleaned up).

"Cross-motions for summary judgment are treated as two individual motions for

summary judgment and held to the same standard," *Banner Bank v. First Am. Title Ins.

Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019), and "the denial of one does not require the

grant of another," *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

However, the burden at summary judgment slightly differs depending on which party

bears the ultimate burden at trial.  A movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  Once this movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  But "if the moving party has the burden of proof [at trial], a more stringent summary judgment standard applies."  *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).  A moving party who bears the burden at trial "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."  *Id.*  When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  At all times, the Court views the record in the light most favorable to the nonmoving party.  *Banner Bank*, 916 F.3d at 1326.

### UNDISPUTED MATERIAL FACTS

The following material facts are drawn from the summary judgment record and are undisputed unless otherwise noted:

1.    ASIC issued an insurance policy (the "Policy") to Amy Ledbetter and Frederick Crabtree covering 50 Forsyth Drive in Longmont Colorado, a home owned by Ms. Ledbetter.  [Doc. 70 at ¶ 1; Doc. 75 at ¶ 1; Doc. 70-1].

2.    The Policy contains a "Concealment Or Fraud" provision that states:

We provide coverage to no "insureds" under this policy if, whether before or after a loss, any "insured" has:

Case No. 1:23-cv-00017-NYW-CYC    Document 82    filed 09/18/25    USDC Colorado
pg 4 of 21

1.     Concealed or misrepresented any material fact or circumstance;

2.     Engaged in fraudulent conduct; or

3.     Made false statements;

relating to this insurance.

[Doc. 70 at ¶ 4; Doc. 75 at ¶ 4; Doc. 70-1 at 26].

3.     The Policy also contains a provision titled "Assignment of Claim Benefits" that states:  "No assignment of claim benefits, regardless of whether made before or after loss, shall be valid without the written consent of all 'insureds', all additional insureds, and all mortgagee(s) named in this policy."  [Doc. 70 at ¶ 3; Doc. 75 at ¶ 3; Doc. 70-1 at 26].

4.     The Policy's declaration page lists Elevations Credit Union as a mortgagee. [Doc. 70 at ¶ 3; Doc. 75 at ¶ 3; Doc. 70-1 at 1].

5.     On April 17, 2021, Ms. Ledbetter filed a claim with ASIC after a pipe leaked under her kitchen sink and behind her kitchen cabinets.  [Doc. 70 at ¶ 6; Doc. 75 at ¶ 6; Doc. 41 at ¶ 13; Doc. 63 at ¶ 13].

6.     An independent adjuster inspected the home and estimated the repair costs at a replacement cost value of $15,309.36 and an actual cash value of $14,719.54.  [Doc. 70 at ¶ 8; Doc. 75 at ¶ 8; Doc. 50-1 at 8].  ASIC issued a payment of $14,219.54:  the actual cash value less the $500 deductible.  [Doc. 70 at ¶ 8; Doc. 75 at ¶ 8; Doc. 50-2].[1]

7.     Ms. Ledbetter hired Ryan Mordhorst, the owner of Blue Ribbon, as the general contractor for the claim.  Ms. Ledbetter and Blue Ribbon entered into a Work

---

[1] Defendant's Motion states that it issued a payment "of $14,719.54 based on the estimated ACV minus the $500 deductible," [Doc. 70 at ¶ 8], and Plaintiff does not dispute this, [Doc. 75 at ¶ 8].  However, the evidence cited in support shows a payment of $14,219.54, which is consistent with a reduction of the deductible.  [Doc. 50-2 at 1].

Authorization Agreement dated April 21, 2021.  [Doc. 70 at ¶ 7; Doc. 75 at ¶ 7; Doc. 70-2 at 1].

8.    Blue Ribbon drafted a repair estimate that estimated a replacement cost value of $45,513.71, which contemplated 10% overhead and 10% profit.  [Doc. 70 at ¶ 9; Doc. 75 at ¶ 9; Doc. 70-3 at 7].

9.    Ms. Ledbetter and Mr. Mordhorst later entered into an agreement titled Assignment of Right to Collect Insurance Proceeds (the "Assignment Agreement") on June 1, 2021.  [Doc. 70 at ¶ 10; Doc. 75 at ¶ 10; Doc. 70-4 at 1].

10.    The Assignment Agreement was not signed by Mr. Crabtree or Elevations Credit Union as mortgagee.  [Doc. 70 at ¶ 10; Doc. 75 at ¶ 10; Doc. 70-4 at 1].

11.    Between November 2021 and February 2022, ASIC issued supplemental payments of $4,331.89, $10,445.09, and $4,535.94.  [Doc. 70 at ¶ 17; Doc. 75 at ¶ 17; Doc. 70-13].

12.    Blue Ribbon later prepared additional estimates with increased costs:  in May 2022, it prepared an estimate reflecting a replacement cost value of $102,922.98.  [Doc. 70 at ¶ 19; Doc. 75 at ¶ 19; Doc. 70-15 at 7].  In September 2022, it prepared an estimate reflecting a $125,003.75 replacement cost value.  [Doc. 70 at ¶ 21; Doc. 75 at ¶ 21; Doc. 70-17 at 8].  And in November 2022 and April 2023, it prepared estimates reflecting a $158,647.34 replacement cost value and $209,386.15 replacement cost value, respectively.  [Doc. 70 at ¶¶ 22–23; Doc. 75 at ¶¶ 22–23; Doc. 70-19 at 8; Doc. 70-20 at 11].

13.    After an inspection by an independent loss consultant, ASIC issued another supplemental payment of $17,972.77 in August 2022.  [Doc. 70 at ¶ 20; Doc. 75 at ¶ 20; Doc. 70-16].

14.    Plaintiff later produced documents reflecting that the total costs incurred for repairs amounted to $39,338.83.  [Doc. 70 at ¶ 29; Doc. 75 at ¶ 29; Doc. 70-24].

15.    The repairs to the property have not been completed.  [Doc. 70 at ¶ 25; Doc. 75 at ¶ 25; Doc. 70-6 at 160:5–10, 239:6–19].

**ANALYSIS**

**I.    Defendant's Motion for Summary Judgment**

ASIC raises a number of arguments in support of its request for summary judgment on Plaintiff's bad faith claims.  First, it argues that Plaintiff "has no standing" to bring its claims because it is not the real party in interest under Rule 17 of the Federal Rules of Civil Procedure.  [Doc. 70 at 10–14 (emphasis omitted)].  It then contends that Plaintiff breached the Policy's anti-misrepresentation clause, which vitiates all coverage and bars Plaintiff's claims.  [*Id.* at 14–18].

**A.    Rule 17:  Real Party in Interest**

**1.    The "Real Party in Interest" Issue is Not Jurisdictional**

ASIC contends in its Motion that "[w]hether Plaintiff has standing to pursue the claims in this action turns on whether Plaintiff is a real party in interest" under Rule 17 of the Federal Rules of Civil Procedure.  [*Id.* at 11].  In support, it cites cases applying constitutional standing principles.  *See* [*id.*].  It insists that Plaintiff "does not have standing to bring suit against ASIC" because, in essence, the Assignment Agreement is ineffective.

[*Id.*].  However, the Court respectfully finds that Defendant improperly conflates the issue of constitutional standing with the issue of the real party in interest under Rule 17.

Rule 17 states "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  "While often confused with standing because of their effect on the right to bring a suit, real-party-in-interest issues . . . do not implicate Article III subject matter jurisdiction."  *Brokop v. Farmland Partners Inc.*, No. 18-cv-02104-DME-NYW, 2021 WL 4963541, at *2 (D. Colo. Sept. 30, 2021); *see also Fed. Deposit Ins. Corp. v. Bachman*, 894 F.2d 1233, 1235–36 (10th Cir. 1990) (explaining distinction between constitutional standing issues and real-party-in-interest issues).

Aside from constitutional standing, however, the prudential standing doctrine "embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1168 (10th Cir. 2011) (quotation omitted).[2] The prudential standing doctrine includes a "general prohibition on a litigant's raising another person's legal rights," *id.* (quotation omitted), which some courts have recognized "is essentially codified in Rule 17(a)(1), which requires that any action 'be prosecuted in the name of the real party in interest,'" *Boscoe Chung v. Lamb*, No. 14-cv-03244-WYD-KLM, 2018 WL 6429922, at *4 (D. Colo. Nov. 14, 2018) (quoting Fed. R. Civ. P. 17(a)(1)). Whether framed as an issue of prudential standing or whether Plaintiff is the real party in interest under Rule 17, the Court's analysis does not implicate traditional jurisdictional or constitutional principles.  With this in mind, the Court turns to the Parties' arguments.

---

[2] "[P]rudential standing is not a jurisdictional limitation and may be waived."  *Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014) (quotation omitted).

### 2.    Whether Plaintiff is the Real Party in Interest Under Rule 17

"In diversity cases, a federal district court must examine the substantive law of the state in which it is located to determine whether a plaintiff is the real party in interest." *Michelson v. Enrich Int'l, Inc.*, 6 F. App'x 712, 716 (10th Cir. 2001) (citing *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984)).  "Where the issue of whether an assignor or an assignee of an assigned claim or right is the real party in interest—giving him the right to maintain an action on the claim or right—is determined by reference to the substantive law of the state in which the federal court sits."  *Id.* (citing *Hoeppner Constr. Co. v. United States*, 287 F.2d 108, 111 (10th Cir. 1960)).

Defendant argues that Plaintiff is not the real party in interest in this case because the Assignment Agreement "was not executed by the mortgagee[], which is explicitly required by the Policy."  [Doc. 70 at 11].  In the alternative, it asserts that the Assignment Agreement is illusory.  [*Id.*].

### a.    The Policy's Anti-Assignment Clause

The Policy provides that "[n]o assignment of claim benefits, regardless of whether made before loss or after loss, shall be valid without the written consent of all 'insureds', all additional insureds, and all mortgagee(s) named in this policy."  [Doc. 70-1 at 26]. ASIC argues that Plaintiff's claims are barred by this anti-assignment clause because Ms. Ledbetter and Plaintiff did not obtain Elevations Credit Union's written consent to the assignment.  [Doc. 70 at 12].  Specifically, it contends that because the Assignment Agreement "does not include any signature by Elevations Credit Union," the mortgagee did not consent to assignment, so the assignment is ineffective under the Policy.  [*Id.*].

8

Plaintiff's response is two-fold.  First, it argues that Elevations Credit Union's consent is evidenced by an email from a Credit Union employee dated July 28, 2023. [Doc. 75 at 7].  Alternatively, it contends that "the policy provisions encumbering the insured's acts as a non-assignment clause of a post-loss assignment . . . [are] invalid under Colorado law," relying on *Parrish Chiropractic Centers, P.C. v. Progressive Casualty Insurance Co.*, 874 P.2d 1049 (Colo. 1994).  [Doc. 75 at 8].

"Contract rights generally are assignable, except where assignment is prohibited by contract or by operation of law or where the contract involves a matter of personal trust or confidence."  *Parrish*, 874 P.2d at 1052.  If a contract "specifically prohibits the assignment of rights or interests under the contract without the consent of one or more of the contracting parties, any purported assignment without such consent will not be enforced."  *Id.*  But in *Parrish*, the Colorado Supreme Court recognized a distinction between assignment of an insurance policy before a loss has occurred and the assignment of benefits due to the insured after a loss.  *Id.* at 1053.  Non-assignment clauses prohibiting pre-loss assignments are "strictly enforced . . . because assignments before loss involve a transfer of a contractual relationship and, in most cases, would materially increase the risk to the insurer."  *Id.*  On the other hand, "assignments of *post-*loss benefits are usually found to be valid regardless of any non-assignment clause in the policy."  *Id.* (citing *Metro. Life Ins. Co. v. Lanigan*, 222 P. 402, 403 (Colo. 1924); second citation omitted).

ASIC argues that *Parrish* is inapplicable to this case because the anti-assignment provision in *Parrish* required the insurer's consent to assignment, while the Policy here required the mortgagee's consent.  [Doc. 80 at 4–5]; *see also Parrish*, 874 P.2d at 1051.

9

It also asserts that "[a] leading treatise states that such clauses are enforceable because they do not prohibit assignments and they do not require insurer consent." [Doc. 80 at 5].

The Court could locate no Colorado authority addressing the propriety of an anti-assignment clause barring assignment of policy benefits absent a mortgagee's consent. However, the Court respectfully finds Defendant's attempt to distinguish *Parrish* unpersuasive. First, while *Parrish* involved a policy provision requiring the insurer's consent to any assignment, *Parrish* did not expressly limit its discussion to clauses requiring *the insurer's* consent. *See* 874 P.2d at 1052–53. Similarly, over a century ago, the Colorado Supreme Court broadly stated that "[a]n assignment of a policy, and the right to recover upon it, after maturity, is valid, regardless of the conditions of the policy." *Metro. Life Ins. Co.*, 222 P. at 403.

The *Parrish* court explained the policy rationales behind permitting assignment of post-loss benefits regardless of any anti-assignment provision to the contrary: "(1) post-loss assignments of the benefits due under the policy are viewed as transfers of a chose in action and public policy favors the free alienability of choses in action, and (2) such assignments would not materially increase the insurer's risk or obligation under the policy." 874 P.2d at 1053. The Court finds these principles equally applicable here. "The purpose of a non-assignment clause is to protect an insurer from increased liability." 3 Couch on Insurance. § 35:4 (3d ed. June 2025 update). But in the context of a post-loss assignment, there is no risk to the insurer that the insurer's risk would unexpectedly increase due to the assignment. Moreover, post-loss assignment of a claim for benefits is the assignment a chose in action, which the Colorado Supreme Court has said public policy favors. *Parrish*, 874 P.2d at 1053.

The Court could locate no Colorado case recognizing a unique rule for post-loss assignment of benefits absent a mortgagee's consent, and the Court declines to recognize such a rule in the first instance.  Accordingly, the Court concludes that under *Metropolitan Life Insurance* and *Parrish*, the Policy cannot condition post-loss assignment on the mortgagee's consent.  *But see Restoration 1 of Port St. Lucie v. Ark Royal Ins. Co.*, 255 So. 3d 344, 345–48 (Fla. Dist. Ct. App. 2018) (applying Florida law and distinguishing between conditioning assignment on an insurer's consent and conditioning assignment on a mortgagee's consent).[3]  The Court thus need not address the Parties' arguments with respect to whether Elevations Credit Union actually consented to the assignment.

### b.    Whether the Assignment Agreement is Illusory

In the alternative, ASIC contends that the Assignment Agreement is illusory because it was not supported by consideration.  [Doc. 70 at 12–13].  In ASIC's view, the Assignment Agreement "imposes *no* obligation on Mordhorst to do *anything* at all."  [*Id.*].  Blue Ribbon disagrees that the Agreement is illusory.  However, it does not argue that the Assignment Agreement was supported by consideration.  *See* [Doc. 75 at 8–9].

---

[3] Defendant asserts that "[a] leading treatise states that such clauses are enforceable because they do not prohibit assignments and they do not require insurer consent." [Doc. 80 at 5].  The treatise referenced by Defendant, Couch on Insurance, cites *Restoration 1* for the proposition that "[a] provision of an insurance policy requiring the consent of all insureds and the mortgagee to any post-loss assignment benefits is enforceable where the policy does not prohibit assignment or condition it on the consent of the insurer."  3 Couch on Ins. § 35:9.  Although a handful of cases follow *Restoration 1* in enforcing post-loss anti-assignment provisions conditioning assignment on the mortgagee's consent, the Court could not locate any other cases addressing this issue.  And this Court, applying Colorado law, finds that there is no meaningful distinction between a post-loss anti-assignment provision requiring an insurer's consent or a same provision requiring a mortgagee's consent.

Instead, Blue Ribbon asserts that consideration is not required to effectuate an enforceable assignment of rights.  [*Id*.].

***Whether Assignments Require Consideration Under Colorado Law.***  All contracts must be supported by consideration, which is "a benefit received or something given up as agreed upon by the parties."  *Compass Bank v. Kone*, 134 P.3d 500, 502 (Colo. App. 2006) (quotation omitted); *see Lucht's Concrete Pumping, Inc. v. Horner*, 255 P.3d 1058, 1061 (Colo. 2011); *Pierce v. St. Vrain Valley Sch. Dist. RE-1J*, 981 P.2d 600, 603 (Colo. 1999) (identifying consideration as one of "the basic elements of contract formation").  "A lack of consideration occurs when the contract, at its inception, does not impose obligations on both parties."  17 C.J.S. Contracts § 120 (May 2025 update). Without consideration, no valid contract is formed, and any purported contract is unenforceable.  *Id.*  The question now before the Court is whether this well-settled contract principle applies to assignment agreements in Colorado.

Plaintiff urges this Court to rely on a decision from the Colorado Court of Appeals—*Elite Custom Builders LLC v. State Farm Fire & Casualty Co.*, No. 19CA0003, 2020 WL 14045936 (Colo. App. Apr. 30, 2020).  [Doc. 75 at 2].  In *Elite Custom Builders*, a panel of the Colorado Court of Appeals rejected an insurance company's argument that certain assignments were invalid for want of consideration, ruling that "as a matter of hornbook law, contractual rights may be assigned gratuitously—such an assignment is not void for lack of consideration, and the assignee has standing to sue to enforce or protect those gratuitously obtained rights."  2020 WL 14045936, *3 (quoting *El Paso Healthcare Sys. LTD v. Molina Healthcare of N.M., Inc.*, 683 F. Supp. 2d 454, 459 (W.D. Tex. 2010)).  The

*Elite Custom Builders* pronouncement relied on persuasive authority from other jurisdictions and the Restatement (Second) of Contracts. *See id.*

In its Reply, Defendant contends that the Court should not rely on the *Elite Custom Builders* case, arguing that the "Colorado Supreme Court has long indicated that assignments (like any contract) require consideration." [Doc. 80 at 5–6]. Specifically, in 1941, the Colorado Supreme Court recognized that it had

> long been established in Colorado that the assignee of a claim may maintain an action thereon as the real party in interest even though there is annexed to the transfer the condition that when the claim is collected the whole or some part of it is to be paid to the assignor.

*Bankers Tr. Co. v. Int'l Tr. Co.*, 113 P.2d 656, 662 (Colo. 1941). It went on to state: "Such an arrangement provides consideration for the assignment." *Id.* More recently, the Colorado Supreme Court echoed this sentiment. In *People v. Adams*, it again recognized that "[a] general proposition of Colorado law is that an assignee of a claim may bring an action, including when there is a separate agreement providing that collection on the claim (sometimes on a contingency payment basis) will be transferred to the assignor." 243 P.3d 256, 261 (Colo. 2010). Importantly, it reiterated that that type of contingency payment "may provide valid consideration for an assignment." *Id.* Other cases have similarly implied the necessity of consideration for an assignment. *See, e.g.*, *Bassett v. Inman*, 3 P. 383, 385 (Colo. 1884) ("The plaintiff, as assignee of the note and account sued upon, was 'the real party in interest,' . . . even though the consideration of the assignment may have been a payment to the assignor after recovery in the suit by the assignee."). And at least one court in this District has held that an assignment of insurance claims without consideration was unenforceable. *See Douglas Smith Builders*

*LLC v. State Farm Fire & Cas. Co.*, No. 22-cv-01722-RM-SBP, 2024 WL 3520712, at \*2–3 (D. Colo. July 24, 2024).[4]

As a federal court sitting in diversity jurisdiction, this Court must look to the decisions of the highest state court in deciding issues of state law. *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007). The Court may also seek guidance from lower appellate courts, though those decisions are not binding on federal courts. *Eckard v. State Farm Mut. Auto. Ins. Co.*, 25 F.4th 1275, 1278 (10th Cir. 2022). Although *Bankers Trust*, *Adams*, and *Bassett* do not explicitly hold that all assignments require consideration to be enforceable, they implicitly suggest as much, and this authority is sufficient to convince the Court that, under Colorado Supreme Court precedent, consideration is required to complete an effective assignment. Moreover, requiring consideration for a contract of assignment falls in line with the widely accepted rule that contracts require consideration. *Lucht's Concrete*, 255 P.3d at 1061; *Pierce*, 981 P.2d at 603.

While the Court does not find the *Elite Custom Builders* case unpersuasive, the Court notes that it relies on non-Colorado authority to hold that assignments may be made gratuitously. *See* 2020 WL 14045936, at \*3. Moreover, *Elite Custom Builders* is an unpublished decision and is thus not precedential to either Colorado state courts or this Court. *See Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 622 n.1 (10th Cir.

---

[4] Plaintiff argues that *Douglas* "does not help [ASIC's position] because [the plaintiff in that case] did not argue in its Response Brief that assignments as a matter of law may be gratuitous and do not require consideration," so Judge Moore decided that case "without considering the legal authority that such assignments may be assigned gratuitously." [Doc. 75 at 9]. The Court is respectfully unpersuaded that a lack of specific argument about gratuitous assignments in *Douglas* means that Judge Moore did not consider the issue or that Judge Moore's ruling is incorrect.

1995) (observing that "[i]n a diversity case, federal courts are not absolutely bound by the decisions of intermediate state appellate courts, but those decisions can be persuasive of how the Colorado Supreme Court might rule" (quotations omitted)); *Welby Gardens v. Adams Cnty. Bd. of Equalization*, 71 P.3d 992, 999 (Colo. 2003); *see also* Colo. R. App. P. 35(e) (explaining that *published* decisions "must be followed as precedent by all lower court judges in the state of Colorado").  For all of these reasons, the Court finds that it must follow the Colorado Supreme Court's guidance that assignments of rights require consideration to be enforceable.

   ***Whether the Assignment Agreement was Supported by Consideration.*** Having decided that assignments require consideration under Colorado law, the Court turns to the Assignment Agreement.  ASIC argues that the Assignment Agreement was not supported by consideration because it creates no obligation on the part of Blue Ribbon.  [Doc. 70 at 12].  The Assignment Agreement states that Ms. Ledbetter "makes this assignment as part of the consideration for [Blue Ribbon's] agreement to perform the services."  [Doc. 70-4 at 1].  However, ASIC contends that Blue Ribbon's agreement to perform services "was already set forth in the work authorization agreement entered into months earlier, on April 21, 2021."  [Doc. 70 at 13]; *see also* [Doc. 70-2 at 1].  ASIC also argues that the Assignment Agreement does not obligate Blue Ribbon to perform any work on the Property "that ha[d] not already been paid for" and does not "provide any guarantee that work will be completed within any specified timeframe."  [Doc. 70 at 13].  Notably, Plaintiff does not contest this argument or argue that the assignment was supported by consideration.  [Doc. 75 at 8–9].

The Work Authorization Agreement provides that Blue Ribbon will "proceed with any necessary Emergency Response and/or Emergency Repairs to the subject property." [Doc. 70-2 at 1]. In exchange, Ms. Ledbetter agreed that payment for any such work would be made to Blue Ribbon. [*Id.*]. Weeks later, Ms. Ledbetter and Blue Ribbon executed the Assignment Agreement, which provides that Ms. Ledbetter "assigns any and all insurance proceeds, including the right to pursue collection of such insurance proceeds from [ASIC], to Blue Ribbon . . . as part of the consideration for the services performed by [Blue Ribbon]." [Doc. 70-4 at 1]. The Assignment Agreement does not appear to contain any other provision setting forth a separate promise on the part of Blue Ribbon, *see* [*id.*], and Plaintiff does not argue that it does, *see* [Doc. 75].

"[I]t is settled that the promising to do, or the doing of, that which the promisor is already legally bound to do, does not, as a rule, constitute consideration for a reciprocal promise." *Ward v. Goodrich*, 82 P. 701, 702 (Colo. 1905). Indeed, "[a]s a general principle, when a party does simply what it has already obligated itself to do under a contract, it cannot demand any additional compensation or benefit." 3 Williston on Contracts § 7:37; *see also* 17 C.J.S. Contracts § 168 ("[T]he obligor is doing no more than he or she was already obliged to do and, thus, has sustained no detriment, nor has the other party to the contract obtained any benefit."). The law considers an agreement to do what a party is already bound to do "not binding as lacking consideration." 3 Williston on Contracts § 7:37.

Because "[a] preexisting duty is not consideration," *Kennedy v. William R. Hudon, Inc.*, 659 F. Supp. 900, 905 (D. Colo. 1987) (applying Colorado law), and because the Assignment Agreement does not on its face contemplate any new consideration

exchanged by Blue Ribbon (and Plaintiff does not identify any consideration in its Response), the Court concludes that the Assignment Agreement was not supported by adequate consideration and, as a matter of law, is not enforceable. 3 Williston on Contracts § 7:37. And because "an assignment must be complete and effective in order for the assignee to be become the real party in interest with the right to maintain an action in his own name," *Adams*, 243 P.3d at 261, the Court agrees with ASIC that the Assignment Agreement is insufficient to transform Plaintiff into a real party in interest under Rule 17.

### c.    "First-Party Claimant" Under § 10-3-1115

In the alternative, Plaintiff raises a separate, alternative basis to argue that it can assert a statutory bad faith claim as a real party in interest. Specifically, Plaintiff argues that it "has standing as a proper first party claimant for its" statutory bad faith claim under § 10-3-1115. [Doc. 75 at 9 (emphasis omitted)].[5] The statute, which prohibits insurance companies from "unreasonably delay[ing] or deny[ing] payment of a claim for benefits owed to or on behalf of any first-party claimant," Colo. Rev. Stat. § 10-3-1115(1)(a), defines "first-party claimant" to include a "legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy," *id.* § 10-3-1115(1)(b)(I).

Plaintiff contends that it may assert claims "on behalf of" Ms. Ledbetter, relying on *Kyle W. Larson Enterprises, Inc. v. Allstate Insurance Co.*, 305 P.3d 409 (Colo. App. 2012). [Doc. 75 at 9]. In *Larson*, the Colorado Court of Appeals held that a "first-party

---

[5] Again, while Plaintiff characterizes the issue as one of standing, the Court finds that this is more appropriately framed as a Rule 17 issue.

claimant" under § 10-3-1115(1)(b)(I) "includes repair vendors" who "are authorized to assert" and do "assert an entitlement to benefits owed on behalf of an insured under an insurance policy." 305 P.3d at 411, 413. In so doing, it relied on the ordinary meaning of "on behalf of," which means "in the interest of; as the representative of; for the benefit of." *Id.* at 412 (quotation omitted).

In its reply brief, ASIC contends that *Larson* does not apply to Plaintiff's statutory claim, relying again on the *Douglas* decision. [Doc. 80 at 8]. In *Douglas*, the court distinguished *Larson* and declined to follow it. *See* 2024 WL 3520712, at *2. Specifically, the *Douglas* court noted that, in *Larson*, there was a dispute about the denial of payment for additional repairs beyond what the insurance company approved. *Id.* (citing *Larson*, 305 P.3d at 410). But in *Douglas*, the plaintiff was "not asserting that it made any repairs to the [insureds'] property for which it ha[d] not been paid." *Id.* "In the absence of any evidence that Plaintiff performed work for which it was never paid," the court "discern[ed] no concrete injury that would confer it with standing." *Id.* ASIC argues that "[t]he *Douglas* opinion therefore held that *Larson* does not apply when the contractor-plaintiff has been paid for the work it performed." [Doc. 80 at 8]. ASIC contends that Plaintiff has been paid for the work it performed because the work "cost Plaintiff $39,339 to complete" and "ASIC has paid "$62,902 for the work Plaintiff has performed." [*Id.* at 8–9]. It follows, according to ASIC, that Plaintiff "has been paid for its work, and *Larson* does not give Plaintiff standing." [*Id.* at 9]. The Court notes, however, that that the *Douglas* court's discussion (and distinguishing) of *Larson* was made in the context of constitutional standing and the attendant injury-in-fact requirement, not in the context of Rule 17. *See Douglas*, 2024 WL 3520712, at *2; see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58

(2014) (explaining that constitutional standing requires an injury in fact, causation, and redressability). The Court thus finds that *Douglas* is not applicable to the question before the Court.

Even so, the Court is respectfully unpersuaded by Plaintiff's argument under § 10-3-1115 and *Larson*. To be sure, while *Larson* stands for the general proposition that a contractor may bring claims "on behalf of" an insured, a contractor may only do so if it is "authorized to assert" those claims. *Larson*, 305 P.3d at 411. Indeed, in *Larson*, the insureds "gave [the contractor] authority to communicate directly with Allstate regarding their claims," which "relieved the insureds of any obligation to assert the claims themselves." *Id.* at 412. Conversely, the Court here has determined that because the Assignment Agreement is not supported by consideration, Ms. Ledbetter's purported assignment of her claims to Blue Ribbon is unenforceable. And Plaintiff does not direct the Court to any other language showing an effective conveyance to Blue Ribbon of her right to assert the statutory bad faith claim or any other evidence showing that Blue Ribbon is otherwise "authorized to assert" the statutory claim.[6] Moreover, the Court does not construe the statute to create an independent cause of action for contractors as first-party claimants *without* an effective authorization from the insured party. *See Larson*, 305 P.3d at 411 (holding that "first-party claimant" includes "vendors . . . who are authorized to assert, and do assert, claims on behalf of insureds"); *id.* at 412 (explaining

---

[6] Plaintiff asserts that, like *Larson*, it "received authority to communicate directly with Defendant regarding th[e] repairs," directing the Court to "Plaintiff's Work Authorization." [Doc. 75 at 10 (emphasis omitted)]. However, Plaintiff actually quotes language from the Assignment Agreement, *see* [*id.*]; *see also* [Doc. 70-4 at 1 ¶ b], which the Court has already determined is unenforceable. The Work Authorization Agreement does not contain a provision authorizing Blue Ribbon to communicate with ASIC on Plaintiff's behalf. *See* [Doc. 70-2].

that "on behalf of" means "in the interest of; as the representative of; [or] for the benefit of").  Indeed, to construe the statute to give a contractor an equal private right of action without an effective authorization invites potential conflict between an insured and a contractor as to whom the duty of good faith (and damages) is owed.  Accordingly, § 10-3-1115(1)(b) does not independently authorize Plaintiff to bring a statutory bad faith claim.

Without an effective assignment or authorization, Plaintiff has not demonstrated that it is a real party in interest under Rule 17, and the Court concludes that Plaintiff is not authorized to assert its bad faith claims.  As a result, Defendant's Motion for Summary Judgment is respectfully **GRANTED**.  Judgment shall enter in Defendant's favor on Plaintiff's bad faith claims.  Because this Order resolves all remaining claims in this case, no claims (or affirmative defenses to those claims) remain.  As such, Plaintiff's Motion for Partial Summary Judgment, which seeks judgment in its favor on a number of Defendant's affirmative defenses, is respectfully **DENIED as moot**.

## CONCLUSION

For the reasons set forth in this Order, **IT IS ORDERED** that:

(1)    Defendant's Motion for Summary Judgment [Doc. 70] is **GRANTED**;

(2)    Plaintiff's Motion for Summary Judgment on Defendant's Fourth, Fifth, Sixth, and Seventh Affirmative Defenses [Doc. 71] is **DENIED as moot**;

(3)    Judgment **SHALL ENTER** in Defendant's favor on Plaintiff's bad faith claims;

(4)    Defendant is entitled to its costs under D.C.COLO.LCivR 54.1; and

(5)    The Clerk of Court is **DIRECTED** to close this case.


DATED:  September 18, 2025                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge